573 A.2d 536

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Donald WILLIAMS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 25, 1990.

Decided April 25, 1990.

Norris E. Gelman, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Philadelphia, Hugh Burns, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue raised by this appeal is whether it is harmless error to permit a witness to be cross-examined with respect to prior convictions for offenses not involving dishonesty or false statement.

Appellant, Donald Williams, was arrested on January 30, 1984, and charged with robbery and possession of an instrument of crime. He was tried before a jury in the Court of Common Pleas of Philadelphia County and convicted of both charges. Following the denial of his post-trial motions, appellant was sentenced to eight to twenty years' imprisonment for the robbery and a concurrent term of two and one-half to five years for the weapons offense. Appellant filed an appeal to Superior Court, and that court found that the impeachment of the defense witness on the basis of his prior convictions of resisting arrest and assault was error.[1] However, Superior Court determined that the error was harmless because the effect of the impeachment on the jury was de minimis in light of the "abundant evidence" presented supporting appellant's conviction, and because the cross-examination/testimony regarding the witness' convictions of offenses not involving dishonesty or false statement was cumulative of other properly admitted impeachment evidence which involved the witness' prior conviction of attempted theft. *Commonwealth v. Williams*, 371 Pa.Super. 509, 515, 538 A.2d 557, 560 (1988).

We granted appellant's petition for allowance of appeal, and we now reverse.[2]

■ Superior Court properly found that a witness may not be impeached on the basis of convictions for crimes not involving dishonesty or false statement. As this Court stated in *Commonwealth v. Penn*, 497 Pa. 232, 244, 439 A.2d 1154, 1160 (1982), *cert. denied*, 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982), "[i]t is well settled that a witness may be impeached on the basis of a prior conviction

---

1. The prosecutor also questioned this witness about his conviction of "carrying firearms on public streets." 18 Pa.C.S.A. § 6108. Trial counsel objected to this question, but the trial court and Superior Court do not specifically address the testimony regarding this conviction when discussing the improper impeachment of the witness. Since this testimony also concerns conduct which does not involve dishonesty or false statement, it will be considered by this Court along with the challenged testimony concerning the witness' convictions for resisting arrest and assault.

2. The grant of allocatur was limited to the within issue.

*only if* the crime involves dishonesty or false statement."
(emphasis added)

Defense witness Gannon Haskins, who testified as an eyewitness that the conduct giving rise to the charges against appellant was committed by three individuals other than appellant, was asked the following questions by the prosecutor on cross-examination:

Q. You weren't released on parole by Judge Stiles until January the 10th, 1984; is that correct?

A. Yes.

Q. You had been incarcerated before then for about eight months, hadn't you?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

Q. Isn't that correct?

A. Yes.

Q. Then Judge Stiles released you on parole after being convicted of assault and resisting arrest; isn't that correct?

[DEFENSE COUNSEL]: Objection....

[sidebar conference omitted]

Q. You are sure that it was in January of 1984?

A. Yes.

Q. It couldn't have been after February the 20th, 1984, could it?

[DEFENSE COUNSEL]: Objection.

THE COURT: It is cross-examination. I will allow it.

[DEFENSE COUNSEL]: But he is repeating the question. He has already testified as to the same.

THE COURT: Well—

[PROSECUTOR]: I will withdraw that question.

Q. Mr. Hankins [sic], were you not arrested and convicted for carrying firearms on the street—

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

Q. —on February the 20th, 1984?

A. Yes, I was.

Q. So you happened to be out of jail during this forty day period when you were at 12th and Spring Garden?

A. Yes.

Notes of Testimony (May 5, 1986) at 110–113.

■ The convictions for resisting arrest, assault, and carrying firearms on public streets do not involve dishonesty or false statement. Thus, appellant's objections to the questions which elicited the testimony regarding these convictions should have been sustained, and this evidence should not have been admitted.

■ We must, however, determine if the erroneous admission of this testimony was harmless error. In the seminal case of *Commonwealth v. Story*, 476 Pa. 391, 406, 383 A.2d 155, 162 (1978), this Court stated that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." The burden of establishing that the error was harmless beyond a reasonable doubt rests with the Commonwealth. *Id.*, 476 Pa. at 406 n. 11, 383 A.2d at 162 n. 11.

■ Error is considered to be harmless where: 1) the error did not prejudice the defendant or the prejudice was de minimis; or 2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or 3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *Id.*, 476 Pa. at 410–15, 383 A.2d at 164–66.

■ In order to determine whether the impeachment of the witness was de minimis, we must assess whether the Commonwealth has shown, beyond a reasonable doubt, that the error did not influence the jury. The central issue in the case was the identification of appellant as the perpetrator of the robbery of the proprietor of a check cashing agency. The victim and two other witnesses for the Commonwealth positively identified appellant as the perpetrator.

One of the two other witnesses was a police officer who testified that he was in his automobile, stopped at a traffic light, when he saw appellant holding a gun to the victim's side as the two stood on the sidewalk in front of the check cashing agency. The police officer followed appellant as appellant attempted to flee the scene and lost sight of appellant only briefly before he was apprehended by a second police officer. According to the police officer, the victim identified appellant at the scene immediately following appellant's arrest.

In support of the defense theory of misidentification, Gannon Haskins and the appellant testified that the robbery was committed by three other individuals who fled the scene when appellant just happened to appear at the site of the robbery, and that the victim and another eyewitness were unable to positively identify appellant at the scene immediately following appellant's arrest. Clearly, the Commonwealth was able to seriously impeach the credibility of appellant's only corroborating eyewitness by presenting to the jury evidence that this witness was a man who had been in and out of jail and had been convicted of a series of crimes, only one of which involved dishonesty or false statement. Inasmuch as the Commonwealth's case was bolstered by the testimony of a presumably respected officer of the law who happened to be an eyewitness to the crime, we cannot say, beyond a reasonable doubt, that the improper impeachment of Gannon Haskins did not influence the jury. Thus, the prejudicial impact of the error was not de minimis, and the Commonwealth has not carried its burden of proving that the error was harmless beyond a reasonable doubt on this basis.

Furthermore, the Commonwealth would not have been able to sustain its burden on either of the other two grounds set forth in *Story, supra.* The cross-examination/testimony concerning Haskins' convictions for offenses not involving dishonesty or false statement was not cumulative of other untainted evidence regarding his criminal past. The Court in *Story, supra,* cites numerous cases in discuss-

ing the "cumulative evidence" approach to the harmless error doctrine. 476 Pa. at 411, n. 20, 383 A.2d at 165, n. 20. In all of those cases, the tainted evidence and the properly admitted evidence were substantially similar. The same cannot be said of the tainted evidence and the properly admitted evidence herein. Convictions of resisting arrest, assault, and carrying firearms on public streets are not substantially similar to a separate conviction of attempted theft.

Additionally, the properly admitted evidence of guilt was not so overwhelming that the error could not have contributed to the verdict, because the properly admitted evidence of guilt was *not* uncontradicted. Pursuant to the analysis set forth in *Story, supra*, the properly admitted evidence of guilt must be uncontradicted for error to be held harmless beyond a reasonable doubt. The testimony of appellant and his corroborating eyewitness, Gannon Haskins, directly contradicted the testimony of the witnesses for the Commonwealth.

Accordingly, we reverse the order of Superior Court affirming the judgment of sentence herein, and we remand to the Court of Common Pleas of Philadelphia County for a new trial.

ZAPPALA, J., files a joining concurring opinion in which CAPPY, J., joins.

NIX, C.J., concurs in the result.

McDERMOTT, J., files a dissenting opinion which PAPADAKOS, J., joins.

ZAPPALA, Justice, concurring.

While I join in the Majority's disposition of this case, I write separately to again point out the ambiguity involved in working with the concept of crimen falsi without some sort of meaningful guideline in determining what cases in fact deal with this concept. As I have stated previously, determining what crimes involve crimen falsi based solely upon the statutory title of the offense or the Clerk of

Courts' verification that a defendant was convicted of a crime does not place that event in proper perspective in terms of meaningfulness and as an aid to the trier of fact. *See, Commonwealth v. Strong,* 522 Pa. 445, 468, 563 A.2d 479, 490 (1989, Zappala dissenting).

Until this court creates a meaningful standard for the evaluation of evidence of prior crimes as impeachment tools, I must take the position that the introduction of such evidence is irrelevant and prejudicial.

CAPPY, J., joins in this concurring opinion.

McDERMOTT, Justice, dissenting.

The majority opinion, in assessing the evidence in this case, would hold that the evidence is under shadow of disbelief simply because it was contradicted and therefore, that the Commonwealth's error was not harmless. Evidence until solidified to fact by the triers of fact is mere allegation. However numerous the proofs, it is nothing until it is accepted as credible by those charged to examine it. When it is legally proper and accepted as credible, all contradiction falls, however persuasive it may have seemed before it was examined and rejected. It becomes nothing. The triers of fact may choose one, some or none of the evidence offered and what they say happened, happened for all legal purposes on this side of the grave. After their verdict, there is no counting except of those they believed. What others may believe is of no moment. We have no authority to supplant their view with ours. When the evidence found legally supports the charge, and the jurors in this case, found the fictitious story offered by the appellant and his serendipitous witness incredible, we have no right or reason to say what they found remains in doubt or loses its force simply because it was contested.

Neither should we dilute it or find it less compelling by counting evidence or testimony that was rejected. Neither should we diminish its force in determining whether it is sufficient, beyond a reasonable doubt, to render an error *de*

*minimus* or irrelevant because one might have found otherwise.

In this case, two prior convictions were offered to attack credibility. One for theft, and the other for assault and resisting arrest. The assault and resisting arrest are not, under present definitions, *crimen falsi*, for which error the majority reverses. Given the evidence offered by the appellant, the error could hardly be determinative in this case. To believe the obvious, fabricated hoax concocted by these two cell mates is to believe a frog may be a bewitched prince. The appellant was seen by a passing police officer holding a gun on the victim. The officer jumped out of his car and pursued him, he briefly eluded the officer, but was immediately captured by another police officer. Returned to the scene, he was immediately identified by the victim, the two police officers and a passing motorist who also saw appellant holding the victim. To which the appellant offered the testimony that he, walking by, was suddenly accused by the victim and ran for fear. He offered one Gannon Haskins as a witness, a man he did not know before the robbery, but who a year later met him on the street and then in jail where they cemented their friendship, and their story. Haskins testified he was also walking near the crime scene and it was not the appellant but three other unknown men who committed the robbery. To read the evidence is not only to disbelieve, it is to be entertained by the comic hope that such a factitious scenario could be believed by anyone. The jury required no other incentive to convict.

I dissent also because I believe the present definition of *crimen falsi* is too narrow a tool for testing credibility. Prior to this Court's decision in *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), it was the law in Pennsylvania for decades that a witness or defendant who took the stand could be impeached by resort to his prior convictions of *any* felonies, or any misdemeanors involving *crimen falsi*. "The rule of evidence is founded on common sense and logic. If a defendant [or a witness] offers himself as a person worthy of belief, the jury has the right to know

what kind of man he is—to aid in assessing his credibility. His previous record is admissible for this purpose just the same as testimony of prior reputation for veracity is evidence for the jury's consideration." *Commonwealth v. Butler*, 405 Pa. 36, 47, 173 A.2d 468 (1961). As is the case in all human endeavors and relationships, the various path's of life followed or chosen, for good or ill, leave an indelible mark upon credibility. Witnesses do not come to the stand in a vacuum, nor are they entitled to be viewed *tabula rasa.* The credibility of their testimony must be assessed in the bright light of all relevant factors including such things as bias and prejudice and their propensity toward truthfulness.[1] For purposes of impeaching the credibility of any witness, I would re-adopt our previously long standing rule. set forth in *Commonwealth v. Butler, id.* permitting introduction of convictions of *any* prior felonies, misdemeanors in the nature of *crimen falsi*, with appropriate time limitations as spelled out in *Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987). I would also add convictions for more than one misdemeanor that require a *mens rea.* I would certainly add the sale of drugs as an impeachable tool. Who sells drugs steals more than money and I would hold that when they do they sell their credibility as well.[2] One's prior conduct, whether they speak for the prosecution or defense in a court of law should be no differently considered than in the universal experience that what one does in their life counts for or against their credibility. Prior offense does not prove present guilt and under a

1. "The issue always is truth of the witness' testimony. In other words, is the witness devoid of moral perception, such a person as would regard lightly the obligations of an oath to tell the truth?" *Burgess v. State,* 161 Md. 162, 171, 155 A. 153, 157 (1931).

2. In reviewing the propriety of the introduction of a prior conviction for sale of heroin to impeach a defendant witness, the Second Circuit Court of Appeals recognized this reality. "Here, the District Judge in his discretion was entitled to recognize that a narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie. From this he could rationally conclude that such activity in a witness' past is probative on the issue of credibility." *United States v. Ortiz,* 553 F.2d 782, 784, (2nd Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977).

proper charge by the court, that fact, also of universal experience, can be made plain to the jurors. That one could risk their credibility by committing an offense is, as it always was, a sound deterrent. When fully restored as a known and usable tool to test credibility it will hopefully not only deter but will also end the practiced, brazen liars more experienced in court than the police who arrested them and many of the lawyers who defend them.

I dissent.

PAPADAKOS, J., joins this dissenting opinion.