658 A.2d 811

COMMONWEALTH of Pennsylvania, Appellee

v.

Robert James HARRIS, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 13, 1995.

Filed May 9, 1995.

---

Shelley Stark, Public Defender, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for the Com., appellee.

Before McEWEN, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

This case concerns the appeal of the judgment of sentence (5–10 years imprisonment) for aggravated assault by the appellant, Robert James Harris. We reverse.

Viewing the evidence in a light most favorable to the verdict-winner, and drawing all reasonable inferences therefrom, the record reveals that at approximately 9:30–10:00 p.m. on the 10th of January, 1992, Donald Morris had exited his home in search of his 13–year–old daughter. As Mr. Morris walked along Cornwall Avenue, he was approached by an unidentified male and propositioned to purchase crack cocaine. Mr. Morris declined the offer, but before he could leave the area he observed the appellant, at a distance of 5–7 feet, with a screwdriver in hand. Morris accelerated his pace, and, as he recalled:

> Mr. Harris grabbed my right sleeve[, but before doing so Harris asked: "Where is the money?" Then,] ... six to nine unidentified black males were running up the street towards us. I proceeded to deal with Mr. Harris swinging him around and I was jumped by [sic] the back.

N.T. 29, 39. The victim was assaulted a second time as he lifted himself from the pavement. Also, the appellant grabbed the victim's face and swung at it with his fist but missed. The two stood one foot apart during this encounter.

With regard to the question of identification, Mr. Morris stated that, during the assault, he:

... touched th[e appellant's] head. His head was platted all up in plats. [The victim] rubbed th[e appellant's] head. *[He] kn[e]w it was Mr. Haris.* That's what was in front of [the victim] when he lifted [the victim's] head up from the ground and tried to sucker punch [the victim].

*Id.* at 33. (Emphasis added). Additionally, during the course of the assault, the victim had $80 stolen from his person, his jaw was broken (and wired for 6 months) and his ribs were fractured.

Thereafter, the police were notified of the assault and the victim selected the appellant out of a photo-array as one of his assailants. The appellant was charged with Robbery, Aggravated Assault and Criminal Conspiracy. Following a jury trial, the appellant was found guilty of Aggravated Assault and sentenced. This appeal ensued and raises two issues for our review.

The first issue posed is whether the trial court erred in ruling that the appellant could be impeached with a prior conviction for Hindering Apprehension if he testified.

In this jurisdiction, "evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statements...." *Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326, 1329 (1987). This "rule of evidence is founded upon common sense and logic. If a defendant offers himself as a person worthy of belief, the jury has the right to know what kind of man he is—to aid in assessing his credibility. His previous record is admissible for this purpose just the same as testimony of prior reputation for veracity as evidence for the jury's consideration." *Commonwealth v. Butler,* 405 Pa. 36, 47, 173 A.2d 468 (1961).

However, it is not always apparent which crimes fall within the ambit of *crimen falsi.* See *Commonwealth v. Jackson,* 526 Pa. 294, 585 A.2d 1001 (1991) (robbery); *Commonwealth v. Walker,* 384 Pa.Super. 562, 559 A.2d 579 (1989) (criminal trespass); *Commonwealth v. Gordon,* 355 Pa.Super. 25, 512 A.2d 1191 (1986) (burglary); *Commonwealth v. Gallagher,* 341

Pa.Super. 152, 491 A.2d 196 (1985) (possession of instrument of crime and sexual offenses charged would permit impeachment for impersonating public officials and theft of services); *Commonwealth v. Jones,* 250 Pa.Super. 98, 378 A.2d 471 (1977) (aggravated robbery is a crime involving serious moral turpitude and indicates propensity for dishonesty on defendant's part); see also *Commonwealth v. Weiss,* 530 Pa. 1, 606 A.2d 439, 442 n. 5 (1992) (unauthorized use of credit card conviction admissible to impeach credibility as a crime of dishonesty or false statement), and contrast with *Commonwealth v. Levene,* 492 Pa. 287, 424 A.2d 865 (1980) (reversible error to impeach defendant by prior arrests for alcohol related conduct); *Commonwealth v. Kilgore,* 437 Pa.Super. 491, 650 A.2d 462 (1994) (record was not complete to assess the appellant's claim that trial court erred in prohibiting impeachment of prosecution witness with introduction of conviction for arson); *Commonwealth v. Correa,* 423 Pa.Super. 57, 620 A.2d 497 (1993) (arrest and conviction for possession of a controlled substance was not evidence of *crimen falsi* to impeach the appellant's character witness, but it was admissible to show witness' bias against police and that a bench warrant had been issued for his arrest); *Commonwealth v. Bowman,* 400 Pa.Super. 525, 583 A.2d 1239 (1990) (suspension of driver's license not *crimen falsi* ); *Commonwealth v. Thomas,* 346 Pa.Super. 11, 498 A.2d 1345 (1985) (convictions for prostitution not admissible as *crimen falsi* for impeachment purposes); *Commonwealth v. Phillips,* 272 Pa.Super. 16, 414 A.2d 646 (1979) (error to allow evidence of theft conviction to impeach defendant where record failed to establish that theft accomplished by deceit); *Commonwealth v. Reidenbaugh,* 266 Pa.Super. 315, 404 A.2d 697 (1978) (prior conviction for fornication and corrupting the morals of minor could not be used to impeach defendant); *Commonwealth v. Benefiel,* 254 Pa.Super. 248, 385 A.2d 1003 (1978) (rape is not *crimen falsi* for impeachment use); *Commonwealth v. Moore,* 246 Pa.Super. 163, 369 A.2d 862 (1977) (statutory rape cannot be used to impeach).

It is the contention of the Commonwealth that because Hindering Apprehension "is placed in the Crimes Code in

Chapter 51, entitled "Obstructing Governmental Operations[,]" ... it would have been proper impeachment under *Commonwealth v. Randall.* Thus, the trial court's ruling was correct and appellant is not entitled to a new trial." Commonwealth's Brief at 5. We disagree and take exception to the trial court's ruling under the particular facts of this case.

 We begin with Justice Zappala's Concurring Opinion in *Commonwealth v. Williams,* 524 Pa. 404, 573 A.2d 536, 540 (1990) which cautioned that:

> ... determining what crimes involve crimen falsi based solely upon the statutory title of the offense or the Clerk of Courts' verification that a defendant was convicted of a crime does not place that even in proper perspective in terms of meaningfulness and as an aid to the trier of fact. *Commonwealth v. Strong,* 522 Pa. 445, 468, 563 A.2d 479, 490 (1989, Zappala, dissenting).

To the preceding caveat, we would add that the elemental aspects of the offense *and* the conduct engaged in by a defendant, which forms the basis of the anticipated impeachable offense, are to be scrutinized in concert to assess the *crimen falsi* nature of the offense.

Instantly, it is true that the statutory posture of Hindering Apprehension appears under Chapter 51's legend: "Obstructing Governmental Operations." However, so does Resisting Arrest (at 18 Pa.C.S.A. § 5104), which the *Williams* Court held did not involve dishonesty or false statements. More specifically, *Williams* held that it was error for the trial court to allow the prosecution to impeach the defendant on cross-examination with the disclosure of such offense to the jury.

Likewise, we do not attribute a *crimen falsi* status to a Hindering Apprehension conviction under Subparagraph (4) of Section 5105(a), which reads:

> A person commits an offense [of Hindering Apprehension] if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:
>
> (1) ...
>
> (2) ...

(3) . . .

(4) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law enforcement; or

(5) . . . [1]

Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 5105.

We refer to Subparagraph (4) of Section 5105(a) because of the trial court's acknowledgement that the appellant pleaded guilty to "warn[ing] a friend of his[,] who the police were seeking to apprehend, of the police coming." The trial court took the position that a conviction for such conduct rose to the level of *crimen falsi* usable as an impeachment tool should the appellant elect to take the stand. We disagree.

If Resisting Arrest, which admittedly involves interaction between a defendant and the police, was held by the Supreme Court in *Williams* not to reflect upon one's propensity to lie, how more attenuated is the appellant's behavior here with no evidence of interaction with police in advising a friend of an impending arrest to escape apprehension.

It is evident from a reading of Subparagraphs (1)–(3) and (5) of Section 5105(a), had the appellant engaged in some form of "concealment," "disguise," or providing the authorities with "false" information, he was guilty of *crimen falsi* behavior triggering the prosecution's entitlement under *Randall*, supra, 515 Pa. 410, 528 A.2d 1326, to impeach the witness guilty of such misconduct. Instantly, however, we are not advised of any false statements attributable to the appellant regarding the whereabouts of the at-large friend, nor do we equate dishonesty with his failure to volunteer the location of the

---

1. For the sake of completeness, the deleted portions of Section 5105(a) provide:

(1) harbors or conceals the other;
(2) provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape;
(3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;
(4) . . .
(5) volunteers false information to a law enforcement officer.

wanted man. The trial court's reference to such (in)action as indicative of *crimen falsi* behavior rings hollow.

The trial court admitted that it is what the appellant should have done (*inform police* of friend's location) and not what he did do (*told friend* of police's search for whereabouts) that rendered him open to impeachment. See N.T. 82–83. This perverts the purpose of *Randall,* supra, 515 Pa. 410, 528 A.2d 1326, in penalizing inaction instead of *mens rea* behavior designed to thwart police business, the latter being *actus reus* and more consistent with conduct reflective of dishonesty and false statement.

█ Accordingly, in light of the preceding, we hold that the trial court erred in exposing the appellant to impeachment had he taken the stand for his conviction for Hindering Apprehension under Subparagraph (4) of Section 5105(a). However, our inquiry is not at an end. We must determine whether the erroneous ruling, which kept the appellant off the stand to give his version of what occurred on the evening in question, was harmless error.

In the seminal case of *Commonwealth v. Story,* 476 Pa. 391, 406, 383 A.2d 155, 162 (1978), the Court held that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." The burden of proof is upon the Commonwealth to establish, beyond a reasonable doubt, that an error is harmless. *Id.* "[A]n error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict." *Id.* at 409, 383 A.2d at 164. The Commonwealth's burden will be met if the prejudice from the erroneously admitted evidence is *de minimus;* the erroneously admitted evidence is merely cumulative of other properly admitted evidence; it is substantially similar in kind and incriminating details to other indisputable, independently obtained, and properly admitted evidence; or if the Commonwealth's evidence of guilt is overwhelming and, by comparison, the prejudice of error is insignificant. *Id.* at 408–416, 383 A.2d at 164–168. Accord *Commonwealth v. Fornicoia,* 437 Pa.Super. 552, 650 A.2d 891, 893 (1994).

The central issue in this case was the identification of the appellant as a participant in the assault of Mr. Morris. On this point, the victim placed the appellant at the scene and testified that there was contact between the two during the assault, even that the appellant lifted the victim's face after the first of two attacks and swung a fist at the victim's face before missing its mark.

Even though the appellant did not testify, his counsel stipulated to the presence of the accused at the scene. Thus, it was through Ms. Danielle Bradley's testimony that the appellant's "presence but no participation" defense surfaced.[2] In particular, she stated that the victim approached the appellant, pulled a "silver" object and grabbed the appellant by his jacket. The two then fell against a fence. Once this occurred, Demar Daniels, Anthony Griffin, Alan White, Michael Richards and Ronnelle Moses came to the appellant's aid and began to strike the victim. Yet, the witness testified that she never saw the appellant "hit or kick" the victim.

Additionally, Ms. Bradley identified Griffin and White as the culprits responsible for removing $80 from the victim's person, and Richards was named as remaining at the site after the group assault and punching the victim "every time he would get up."

Under the *Story* standard, we do not find that the trial court's error in ruling impeachment permissible was *de minimus* or the prejudice flowing therefrom harmless as a result of Ms. Bradley's testimony. This was a case where the only witness to testify for the Commonwealth, as to the events on the evening in question, was the victim.[3] Thus, Mr. Morris was the crucial prosecution witness because he was the victim of the crime. Therefore, the credibility of the victim and the appellant (had the latter testified) would have been a key issue

2. The appellant received a self-defense and coming to the defense of others instruction from the trial court. N.T. 239.

3. This is so despite the fact that the victim testified that he believed a neighbor came to his aid by telling his assailants: "don't hit him". N.T. 71. No such neighbor/witness appeared at trial.

for the jury to resolve: The appellant's version (of presence-but-noninvolvement) differs markedly from the victim's account of (group assault with the appellant participating in) the incident.[4] Cf. *Commonwealth v. Smith,* 442 Pa. 265, 275 A.2d 98, 100 (1971) (where victim identified the defendant as assailant and two witnesses placed him in the victim's home on day of crime, failure of counsel to seek continuance to produce witness to buttress the appellant's alibi defense was ineffectiveness of counsel because "a witness to corroborate the appellant's alibi would have been the single most important possible addition to appellant's defense."); *Commonwealth v. Charleston,* 251 Pa.Super. 311, 380 A.2d 795, 798 (1977) (where conviction based almost exclusively upon the credibility of the complaining witness, alibi witness' testimony "may have cast a shadow on [the victim's] truthfulness" rendering counsel ineffective for failing to produce said alibi witness).

4. Yet, a review of the record paints a picture of a victim unable to identify the appellant as ever striking him during the assault; to-wit:

[Counsel for appellant:]

Q And you are saying all of a sudden they jumped on you and started beating you?

[Appellant:]

A Yes. I was struck first, knocked off balance and the rest of the beatings came on top of that.

Q Well, how do you know how many guys it was?

A I can't say actually how many it was. I seen what was coming and they were all over me.

Q Okay. Can you say how many of them had plats in their hair?

A No, Ma'am. I didn't look at them, you know, individually. It was a group, about that many and it was just us on the street.

Q *Okay; and you really can't say whether any of those hits were by Mr. Harris; isn't that true?*

A No, Ma'am. *I was beaten down, couldn't identify no one.* They were all there saying—Did you think he was just going to stop and walk away?

Q No. I'm just asking you what you observed.

A *I couldn't identify him.*

\* \* \* \* \* \*

Q Okay. In other words, you were already semiconscious when you think that incident happened?

A That incident going on; yes; it was coming to me. I wasn't spinning anymore with dizziness.

Q *Before that, you have no idea if Mr. Harris hit you or anything?*

A No. *I couldn't identify him.* \* \* \*.

N.T. 71, 77 (Emphasis added).

It also appears that the jury did not find the victim's version to be wholly plausible, as the appellant was acquitted of all offenses except for the charge of aggravated assault. Further, the victim's testimony suggested that he was unable to identify the appellant as ever striking him during the incident. See note 4, supra.

 It is well-established that proof of facts showing the commission of the crime by someone else is admissible. *Commonwealth v. Loomis*, 270 Pa. 254, 113 A. 428, 431 (1921). However, viewed in the context of the victim-only testifying as to the accused's involvement in the commission of a crime, the decision of the appellant not to testify (because of exposure to impeachment on a Hindering Apprehension conviction) weakened his defense of presence-but-non-involvement in the assault. In other words, the jury was foreclosed from considering the *appellant's account* of the events, which constituted the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness' truthfulness in a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of the defendant. See *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440, 443 (1975).

Therefore, evidence of the appellant's testimony (as to presence-but-non-involvement) "may well have persuaded the jury to reject completely the victim's testimony and acquit [the] appellant." [5] *Commonwealth v. Davis*, 438 Pa.Super. 425, 652 A.2d 885, 889 (1995). However, the appellant opted not to testify and avoided his credibility being challenged with the trial court's impeachment ruling. We find, under the particular circumstances of this case, "[t]he ruling thus denied [the appellant] his right to present relevant, material and competent evidence from which the jury might have inferred he was not involved in the [Morris assault]." *Commonwealth v. Boyle*, 470 Pa. 343, 368 A.2d 661, 669–670 (1977).

**5.** Having examined the trial testimony against the backdrop of the appellant's proposed account of what occurred, we conclude that his testimony would not have been merely cumulative in nature. See *Story,* supra; *Charleston,* supra.

Accordingly, the appellant has demonstrated sufficiently that the exclusion of his proposed testimony was prejudicial and not *de minimum*. See *Story*, supra; *Davis*, supra. Every defendant should be availed the opportunity to give his/her version of events to deflect an accuser's finger-of-guilt. This was thwarted here by the trial court's evidentiary ruling. To remedy the matter, we reverse the judgment of sentence and remand for a new trial.[6]

Judgment of sentence reversed, case remanded for a new trial, and jurisdiction is relinquished.

---

**6.** Our ruling upon the appellant's initial issue granting reversal and remand for a new trial dispenses with the need to address his second appellate claim assigning the trial court with error in interrupting counsel's closing argument and in failing to give a jury instruction to correct an allegedly negative impression caused by the interruption.