J-A02027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NICOLE S. ST. AUDE | |
| Appellant | No. 1058 EDA 2014 |

Appeal from the Judgment of Sentence of March 6, 2014
In the Court of Common Pleas of Chester County
Criminal Division at No: CP-15-CR-0000499-2012

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED MARCH 04, 2015**

Nicole S. St. Aude challenges her March 6, 2014 judgment of sentence.  Herein, St. Aude contends that the evidence was insufficient to support her jury conviction of theft by unlawful taking and receiving stolen property.[1]  We affirm.

The trial court set forth the factual history of this case as follows:

On November 8, 2011, Kurt Linneman ("victim"), the owner of Crocodile Café, reported a theft to Tredyffrin Township Police Department.  Crocodile Café is located in Wayne, Tredyffrin Township, Chester County, Pennsylvania.  The victim stated that [St. Aude], who was one of his employees and [his] executive assistant, stole money from his company.

As the victim's executive assistant, [St. Aude] was responsible for calling in the company's payroll every two weeks to Automatic Data Processing ("ADP") who handled the

---

[1]    18 Pa.C.S. §§ 3921(a) and 3925(a), respectively.

establishment's payroll account. [St. Aude's] other job duties included managing the company's finances, paying the company's bills, maintaining the payroll account statements and credit card statements[,] and other administrative duties.

The victim was alerted to the thefts when he wanted to obtain salary information on his general manager, Erin Szylek. The victim asked [St. Aude] to provide him with a copy of the payroll account statement for October 2011, but she never did. In response to the victim's repeated requests for the payroll information, [St. Aude] provided excuses as to why she could not locate it. Based on [St. Aude's] evasiveness, the victim decided to examine some of the most recent payroll statements that were in the office.

Upon examining these statements, the victim suspected that [St. Aude] was being overpaid. The victim informed [St. Aude] that he thought she was being overpaid in response to which, [St. Aude] volunteered to bring him a copy of her TD [B]ank statement for the past year to show that she was not being overpaid. [St. Aude's] authorized salary when she started working at Crocodile Café was $40,000 and when she finished her salary was $45,000. [St. Aude's] pay check is directly deposited into her TD Bank Account. The purported TD Bank statement provided by [St. Aude] to the victim appeared to be an account statement generated on TD Bank Letterhead and contained [St. Aude's] hand written notes. The statement showed that [St. Aude] was receiving her authorized salary and was not being overpaid.

However[,] not completely satisfied by the purported bank statement, the victim called ADP to verify the direct deposit amount reflected in the purported bank statement. ADP instructed the victim to remain on the phone while it faxed him the unmasked master payroll report. The victim agreed and informed all staff members to leave the office so that he could be certain that no one else received the incoming fax. The unmasked master payroll report revealed that [St. Aude] was being substantially overpaid. The victim discovered that between August 27, 2010 and November 4, 2011 [St. Aude] had received eighteen paychecks where she was overpaid. The report indicated that the overpayments were the result of salary overrides. A salary override can only occur when an employee with the company payroll code calls ADP and specifically authorizes an increase. It is ADP's policy that the employee who

calls in payroll and has the company code may authorize a salary increase for any employee besides himself. The victim, [St. Aude], and Erin Szylek, have access to the company code. The total amount of unauthorized overpayments to [St. Aude] was $34,961.83. The victim never called in the company payroll during [St. Aude's] tenure with the company. Ms. Szylek only called in payroll once or twice when [St. Aude] was on vacation. No other employee was overpaid during [St. Aude's] tenure with Crocodile Café.

A short time after receiving the unmasked master payroll report, the victim received an email purportedly from ADP. The Email was allegedly sent to replace the incorrect information reflected in the unmasked master report. The Email contained different payroll numbers from the unmasked master and showed that [St. Aude] was only receiving her authorized salary. Confused by the conflicting documents, the victim called ADP to inquire about these discrepancies. ADP informed the victim that the Email was not sent from ADP, and therefore it was fraudulent.

At this point, the victim confronted [St. Aude] about the overpayments and asked her to go with him to TD Bank. The victim wanted to personally accompany [St. Aude] to the bank so that they could obtain her bank statements and compare them to the purported TD Bank statement previously provided by [St. Aude] and the unmasked master report sent by ADP. [St. Aude] agreed to go with the victim to TD Bank and she obtained her account statements from December of 2010 to January of 2011. These statements were consistent with the unmasked master payroll report and reflected that [St. Aude] was being overpaid. Additionally, the authentic TD bank statements contained different amounts than the purported TD Bank Statement previously supplied by [St. Aude]. Now, suspecting that [St. Aude] provided him with fraudulent documents, the victim decided to call the police and report the theft.

After discovering the payroll thefts, the victim decided to review the company's American Express credit card statements. Upon reviewing the statements from August 2010 to October 2011, obtained directly from American Express, the victim discovered numerous unauthorized credit card purchases. The unauthorized purchases were not remotely related to business expenses. The victim only allowed the company credit cards to be used for

legitimate business expenses. The total amount of unauthorized purchases made with the company card was $29,591.55.

The actual American Express statements reviewed by the victim after finding out that [St. Aude] was receiving salary overpayments were different from the purported credit card statements previously provided to him by [St. Aude]. Specifically, the statements that the victim previously reviewed with [St. Aude] only reflected authorized business related purchases. All unauthorized purchases were omitted from the statements. The victim, Sarah Bushner and Erin Szylek had company credit cards. Although [St. Aude] was not directly issued a company card, she occasionally borrowed a card from one of the three cardholders. Specifically, [St. Aude] would inform one of the cardholders that she needed to use their card to make a legitimate business purchase. The jury ultimately found [St. Aude] not guilty on the related American Express charges.

Trial Court Opinion ("T.C.O."), 9/2/2014, at 2-4. (citations to notes of testimony and exhibits omitted).

On January 9, 2014, a jury convicted St. Aude of one count each of theft by unlawful taking in violation of 18 Pa.C.S. § 3921(a), and receiving stolen property in violation of 18 Pa.C.S. § 3925(a). The jury found the total amount of money taken from the victim and received by St. Aude was $34,961.83. On March 6, 2014, following a pre-sentence investigation, St. Aude was sentenced to eleven and one half to twenty-three months' incarceration plus five years' probation for theft by unlawful taking.[2] On March 14, 2014, St. Aude timely filed a motion for reconsideration of

---

[2]   No further sentence was imposed for the receiving stolen property conviction.

- 4 -

sentence and a motion for reconsideration of verdict, both of which the trial court denied without a hearing.

On April 3, 2014, St. Aude timely filed a notice of appeal. The trial court ordered, and St. Aude timely submitted, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On September 2, 2014, the trial court issued a Pa.R.A.P. 1925(a) opinion.

St. Aude raises three[3] issues for this Court's consideration:

  I.  Did the Commonwealth present sufficient evidence to support [St. Aude's] convictions for theft-unlawful taking and theft-receiving stolen property where: (1) the Commonwealth introduced no evidence to show that [St. Aude] was the individual who caused a third-party company to deposit excessive funds in her bank account; (2) there was no evidence presented to show that [St. Aude] knew she had received unauthorized funds; (3) the evidence showed that [St. Aude] in fact returned funds in the amount of $4,400 to her employer when she realized she had been overpaid; and (4) the Commonwealth's evidence established that multiple individuals had access to a company code to authorize the payment of funds into [St. Aude's] bank account?

  II.  Was the evidence proffered to support [St. Aude's] convictions for theft-unlawful taking and theft-receiving stolen property so unreliable that it rendered the evidence insufficient as a matter of law where the jury was required to base its verdict largely on the receipt of inadmissible hearsay evidence?

  III.  Did the trial court err when it instructed the jury that it could consider [St. Aude's] statement to the police as

_____

[3] St. Aude raised a fourth issue in her Pa.R.A.P. 1925(b) statement. However, because she failed to pursue this issue in her brief, it has been waived. Pa.R.A.P. 2119(a).

substantive evidence of her guilt where the statement was not introduced into evidence and the prosecutor clearly explained that he was using the statement only for impeachment purposes?

Brief for St. Aude at 4 (minor spelling errors corrected).

St. Aude first contests the sufficiency of the evidence to support her convictions for theft by unlawful taking and receiving stolen property. She argues, *inter alia*, that the Commonwealth failed to prove that she caused the unauthorized overpayments to be deposited into her bank account, and that there was no evidence indicating that she knew that she had received the overpayments. Brief for St. Aude at 10-13. We disagree.

Our standard of review for a sufficiency of the evidence claim is well established:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa. Super. 2005)).

In addressing the merits of St. Aude's claim, we first examine the sufficiency of the evidence supporting her conviction of theft by unlawful taking. A person is guilty of theft by unlawful taking "if [she] unlawfully takes, or exercises unlawful control over, moveable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a).

First, St. Aude, as the victim's executive assistant, was the employee responsible for calling in the company's payroll to ADP. Notes of Testimony ("N.T."), 1/7/2014, at 42-43. The evidence demonstrates that St. Aude, Ms. Szylek, and the victim were the only individuals with access to the company code to authorize salary payments. *Id.* at 45. In addition, trial testimony revealed that Ms. Szylek called payroll only once or twice during St. Aude's tenure, and only when St. Aude was on vacation. *Id.* Furthermore, St. Aude was the only employee who received excessive overpayments, which transpired over eighteen paychecks between August 27, 2010 and November 4, 2011. *Id.* at 62. In order for these overpayments to occur, an employee of Crocodile Café needed to call ADP and request that the employee's salary be adjusted. *Id.* at 45-46. From this evidence, it was reasonable for the jury to infer that St. Aude was responsible for the overpayments.

St. Aude also claims that there was no evidence establishing her knowledge of receipt of the unauthorized funds. Brief for St. Aude at 18-19. In support of her claim, St. Aude testified that she first noticed a substantial

increase of funds in her bank account around February 2011. N.T., 1/8/2014, at 103-06. St. Aude claimed that she was careless in monitoring her bank account, and believed that the victim or her father provided the excess money that she discovered in her bank account. *Id.* However, the jury found that St. Aude was responsible for the overpayments and did not find her testimony about lack of knowledge credible.

In addition, the fact that St. Aude attempted to conceal her thefts further supports the jury's finding. St. Aude repeatedly failed to supply the victim with a statement of the company's payroll account, and offered him a fraudulent statement of her TD Bank account when he suspected she had been overpaid. N.T., 1/7/2014, at 48-51. The victim also requested a payroll statement directly from ADP, which indicated that St. Aude was overpaid, and then received an email, allegedly from ADP, stating that St. Aude had not been overpaid. Finding this suspicious, the victim then called ADP and was informed that the email was fraudulent. *Id.* at 56-59.

Because St. Aude was responsible for payroll and had the company code to authorize salary payments, was the only employee to receive continuous overpayments, and was the only employee with reason to authorize the overpayments, we conclude that the evidence was sufficient to prove that St. Aude caused ADP to deposit excessive funds into her bank account. Therefore, we find that the evidence presented by the Commonwealth allowed the jury to conclude beyond a reasonable doubt that St. Aude was guilty of theft by unlawful taking.

Next, we examine the sufficiency of the evidence supporting St. Aude's conviction of receiving stolen property. A person is guilty of receiving stolen property "if [she] intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a). Once again, St. Aude alleges that the evidence presented by the Commonwealth was insufficient to establish her guilt beyond a reasonable doubt. Brief for St. Aude at 18. Again, we disagree.

To obtain a conviction for receiving stolen property, "the Commonwealth has the burden of proving three distinct elements of the crime of receiving stolen goods: (a) that the goods are stolen; (b) that the defendant received such goods; and (c) that he received them knowing, or having reasonable cause to know that they were stolen." *Commonwealth v. Stafford*, 623 A.2d 838, 840 (Pa. Super. 1993) (quoting *Commonwealth v. Davis*, 280 A.2d 119, 121 (Pa. 1971)). However, "the mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen." *Commonwealth v. Foreman*, 797 A.2d 1005, 1012 (Pa. Super. 2002) (citing *Commonwealth v. Matthews*, 632 A.2d 570, 571 (Pa. Super. 1993)).

Having determined that the Commonwealth presented sufficient evidence to allow the jury to conclude that St. Aude was guilty of theft by unlawful taking, the first two elements of receiving stolen property are established through sufficient evidence: (a) that the goods are stolen, and (b) that St. Aude received such goods. Therefore, we need only consider whether the Commonwealth presented sufficient evidence for the jury to determine that St. Aude knew, or had reasonable cause to know, that she was in possession of stolen funds. Because St. Aude personally caused the unauthorized overpayments to be deposited directly into her account, St. Aude was clearly aware that she was in possession of "stolen goods." Moreover, the evidence indicating that St. Aude attempted to conceal the overpayments only supports the conclusion that she knew that she was in possession of stolen goods.

Because the evidence provided by the Commonwealth was sufficient to prove that St. Aude caused the unauthorized salary overpayments at issue to be deposited into her bank account, she undoubtedly was aware that she was in possession of the stolen funds. Therefore, in reviewing the record in the light most favorable to the Commonwealth, we conclude that the Commonwealth provided sufficient evidence to sustain the receiving stolen property and theft by unlawful taking convictions. St. Aude's first issue does not merit relief.

In St. Aude's second issue, she argues that the trial court erred by allowing the jury to consider inadmissible hearsay evidence. Brief for St.

- 10 -

Aude at 21-24. This issue is waived. In making its decision, the trial court found that St. Aude's Rule 1925(b) statement was vague with regard to this issue. Specifically, the trial court stated that "[St. Aude's] failure to adequately identify the issue pursued on appeal, prevents us from providing meaningful review regarding this issue." T.C.O. at 9. Consequently, the trial court did not address this claim and deemed it waived. *Id.*; ***Commonwealth v. Parker***, 104 A.3d 17, 29 (Pa. Super. 2014).

In her brief to this Court, St. Aude identifies five instances in which she claims that the trial court erroneously permitted the Commonwealth to offer inadmissible hearsay evidence. Brief for St. Aude at 23-24. Despite this contention, our review of the record reveals that St. Aude failed to object to any of the alleged hearsay testimony at trial. N.T., 1/7/2014, at 50, 53, 56-57, 58, 59-60. Therefore, she has waived any objection to that testimony on appeal. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In her final issue, St. Aude alleges that the trial court erred in its jury instruction by allowing the jury to consider St. Aude's statement to the police as substantive evidence. Brief for St. Aude at 27. We disagree. This issue also is waived. In her statement to the police, St. Aude admitted to using the company credit card for personal purchases. N.T., 1/8/2014, at 136-38. Nonetheless, St. Aude again failed to object to the jury instruction at trial, therefore waiving the issue on appeal. ***See*** Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned

as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."); Pa.R.A.P. 302(a), *supra.*

Moreover, even if St. Aude had preserved her issue for appeal, and if the instruction was erroneous, the evidence offered in her statement amounted to no more than harmless error. Error is harmless where:

> 1) the error did not prejudice the defendant or the prejudice was *de minimis*; or 2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or 3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Williams***, 573 A.2d 536, 538-39 (Pa. 1990). The statement at issue is irrelevant to St. Aude's convictions, because the statement concerns only whether the victim authorized St. Aude to use the company credit card for personal expenses. N.T., 1/8/2014, at 136-38; T.C.O. at 10. However, the jury acquitted St. Aude on the charges related to credit card use. N.T., 1/9/2014, at 36; T.C.O. at 10. Therefore, even if she had not waived this issue, St. Aude was not prejudiced by the trial court's instruction that her statement to police could be considered as substantive evidence of her guilt.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/4/2015</u>