J. S30018/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :     IN THE SUPERIOR COURT OF
                                         :           PENNSYLVANIA
              v.                   :
                                          :
CLARENCE BURBAGE,               :          No. 1799 EDA 2013
                                          :
             Appellant         :

Appeal from the Judgment of Sentence, May 31, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR-0001040-2012,
CP-51-CR-0001045-2012

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E. AND JENKINS, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED AUGUST 21, 2015**

Clarence Burbage appeals from the judgment of sentence of May 31, 2013, following his conviction of first-degree murder, aggravated assault, robbery, conspiracy, and possession of an instrument of a crime. We affirm.

> These charges arose out of a dispute over drug sales between Appellant and decedent, Danny Williams ("Williams"). On May 22, 2011, between 1 A.M. and 2 A.M., Appellant, Rakeem Divers ("Divers"), and co-defendant, Dyshan Aursby ("Aursby"), attacked Jerry Holloman ("Holloman"), also known as "Mike". Appellant, Divers, and Aursby asked Holloman where Williams was and Holloman told them that Williams was with his girlfriend, Delisha Foy ("Foy"), at her house. Appellant, Aursby, and Divers told Holloman to call Williams on the phone. When Holloman hesitated, Appellant took Holloman's phone and called Williams. The three gentlemen held Holloman at gunpoint as they walked to Foy's house on South 66th Street to see Williams. When they arrived at Foy's home,

Holloman was told to stand at the door while Appellant, Aursby, and Divers hid. When Williams opened the door, Holloman yelled "run". Williams attempted to slam the door shut but Appellant headed inside before the door closed. Holloman ran down the alleyway across the street from Foy's home while Aursby and Divers followed Appellant into the home. As Appellant, Aursby, and Divers went into the home, Williams ran up the stairs to the second floor. Williams then jumped out of a second floor window, hit the ground, and began limping away. Aursby and Divers followed Williams, Aursby drew his gun, and fired it at Williams, striking Williams in his left buttock. After Appellant, Aursby, and Divers left, Holloman found Williams laying [sic] on the ground and stayed with him until the police arrived. Williams was taken to the Hospital of the University of Pennsylvania (HUP). That same day, Williams was interviewed inside HUP and told Detective Maurizio that Aursby, whom he referred to as "Sha", and Burbage, whom Williams referred to as "C Murder" shot him. Based on the identifications made by Williams and Holloman, arrest warrants were filed for Aursby and Appellant. At approximately 10:20 P.M. on May 22, 2011, Philadelphia Police Officers McLaughlin and McKiernon arrested Aursby.

At approximately 3 A.M. on May 27, 2011, Appellant and Divers again attacked Holloman and demanded Holloman call Williams to meet him. Holloman called Williams and told him to meet him in the area of 65th Street & Greenway Avenue. When Williams arrived, he began arguing with Appellant. Upon seeing Williams reach under his shirt, to appear as if he had a gun, Divers gave Appellant a gun and Appellant advanced towards Williams. Appellant then shot Williams at least eight (8) times across the chest, mid-section, arms, and legs. Fire Rescue arrived and Williams was pronounced dead at 3:20 A.M.[]

Trial court opinion, 11/15/13 at 2-3.

On May 31, 2013, following a jury trial, appellant was found guilty of the above charges. Appellant received the mandatory sentence of life imprisonment without parole for first-degree murder, and a concurrent sentence of 5 to 10 years for robbery. No further sentence was imposed on the remaining charges. A timely notice of appeal was filed on June 5, 2013. Appellant complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.

Appellant has raised the following issues for this court's review:

> 1. Did not the trial court err when it denied appellant's motion **in limine** pursuant to Pa.R.E. 403 and Pa.R.E. 404 and permitted the Commonwealth to repeatedly introduce evidence that appellant's nickname was "C-MURDER" or "MURDER", which the jury heard 80 times over the course of appellant's homicide trial, where such evidence had little probative value, was extremely prejudicial to the defense, and was inadmissible character evidence?
>
> 2. Did not the trial court improperly deny appellant's motion for a mistrial after the court's anticipatory admission of Kyree Ball's out of court statement, "Murder killed Danny", when Kyree Ball later refused to testify at trial, and the defense had no opportunity to cross-examine this witness?
>
> 3. Was not the evidence legally insufficient to establish appellant's guilt of murder beyond a reasonable doubt where the Commonwealth introduced evidence about the crime scene, including ballistic evidence that contradicted the purported eyewitness testimony?

Appellant's brief at 4.

In his first issue on appeal, appellant argues that the trial court erred in permitting the Commonwealth witnesses to refer to appellant by his nickname, "Murder" or "C-Murder." Appellant states that they should have been instructed to refer to him by his given name, Clarence, and their prior statements should have been redacted to identify him as "C." Appellant argues that repeatedly using the nickname "Murder" or "C-Murder" during trial was highly prejudicial and the evidence had no real probative value where identity was not at issue.

> "The admissibility of evidence is a matter of trial court discretion and a ruling thereon will only be reversed upon a showing that the trial court abused that discretion." **Commonwealth v. Malloy**, 579 Pa. 425, 856 A.2d 767, 775 (2004). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. **Commonwealth v. Brougher**, 978 A.2d 373, 376 (Pa.Super.2009).

> **Commonwealth v. Barnett**, 50 A.3d 176, 182 (Pa.Super.2012). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." **Commonwealth v. Fransen**, 42 A.3d 1100, 1106 (Pa.Super.2012). However, even relevant evidence "may be excluded if its probative value is outweighed by the potential prejudice." **Id.**

*Commonwealth v. Williams*, 58 A.3d 796, 800 (Pa.Super. 2012), *appeal denied*, 68 A.3d 908 (Pa. 2013).

In **Williams**, this court held that the trial court did not abuse its discretion in allowing the Commonwealth's witnesses and the prosecutor to refer to the appellant by his nickname, "Killa," where the witnesses who implicated the appellant in the victim's murder only knew him by the name "Killa." **Id.** The appellant in **Williams** conceded that he was known by his nickname, which he gave himself. **Id.** The **Williams** court explained,

> Our review of the record shows that the Commonwealth did not use Appellant's nickname to suggest Appellant had a violent character, but used it to show that the witnesses recognized Appellant and could identify him as one of the perpetrators even though the witnesses did not know Appellant's real name. Moreover, we find that the evidence's probative value in identifying Appellant outweighed any prejudice that resulted from the use of his nickname.

**Id.** at 800-801. Instantly, with the exception of Foy, all the witnesses knew appellant as "Murder" or "C-Murder" and identified him to police as such. (Notes of testimony, 5/20/13 at 25.) The witnesses identified appellant in the photographic array as "C-Murder." (**Id.**) As the Commonwealth argued, this was relevant identification evidence. (**Id.** at 26.) While appellant claims identification was not at issue, his defense at trial was that he was not the shooter. (Appellant's brief at 21.) Clearly, then, the evidence had probative value in identifying appellant as the gunman. In addition, the trial court ruled that the Commonwealth could not use appellant's nickname in

making argument to the jury, thereby limiting the prejudicial effect of the evidence. (Notes of testimony, 5/20/13 at 36.) The trial court did not abuse its discretion in denying appellant's motion *in limine* to exclude any reference to his nicknames "Murder" and "C-Murder" where he was identified as such by several eyewitnesses.

Next, appellant argues that the trial court should have granted his motion for mistrial where the prior consistent statement of Kyree Ball, that "Murder killed Danny," was admitted into evidence over defense objection. Ball subsequently refused to testify, thereby denying the defense the opportunity to cross-examine him regarding this statement.

> With regard to the denial of mistrials, the following standards govern our review:
>
>> In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interests but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the

resulting order is constrained to determining whether the court abused its discretion.

*Commonwealth v. Hogentogler*, 53 A.3d 866, 877-878 (Pa.Super. 2012), *appeal denied*, 69 A.3d 600 (Pa. 2013) (citations omitted). "The remedy of a mistrial is an extreme remedy required 'only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.'" *Id.* at 878 (citations omitted).

Here, appellant had attacked Ball's credibility, arguing that he had a motive to fabricate. The trial court allowed Foy to testify regarding Ball's out-of-court statement that "Murder killed Danny." (Notes of testimony, 5/22/13, p.m. session at 43.) This was admitted as a prior consistent statement in anticipation of Ball testifying the following day. Pennsylvania Rule of Evidence 613 provides, in relevant part:

> **(c)** **Witness's Prior Consistent Statement to Rehabilitate.** Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose[.]

Pa.R.E. 613(c)(1).

"To the extent that prior consistent statements are offered to prove the truth of the matter asserted therein, they are plainly inadmissible hearsay. However, when they are offered to corroborate in-court testimony, prior consistent statements are not hearsay." *Commonwealth v. Willis*, 552 A.2d 682, 691 (Pa.Super. 1988), *appeal denied*, 559 A.2d 527 (Pa. 1989 (citations omitted).

> Usually, evidence of a prior consistent statement may not be introduced until after the witness's testimony has been attacked on cross-examination in one of the two ways specified in Rule 613(c). Pa.R.E. 613(c) cmt. Occasionally, however, it is clear before cross-examination that the defense will focus on impeachment of the witness, either by showing fabrication, bias, etc., or by introducing a prior inconsistent statement. In such cases, the trial court is afforded discretion to admit the prior consistent statement in anticipation of impeachment.

*Commonwealth v. Cook*, 952 A.2d 594, 625 (Pa. 2008), citing *Commonwealth v. Wilson*, 861 A.2d 919, 930 (Pa. 2004).

As stated above, Ball refused to testify and was held in contempt of court. (Trial court opinion, 11/15/13 at 6.) Therefore, the defense did not have the opportunity to cross-examine Ball regarding his prior out-of-court statement. As such, Ball's statement should not have been admitted. However, we determine that the trial court properly denied appellant's motion for mistrial where Jerry Holloman made the identical statement, *i.e.*, "Murder killed Danny." (Notes of testimony, 5/22/13, p.m. session at 43; 5/23/13, a.m. session at 37.) Appellant does not contest that Holloman's

statement was admissible under Rule 613(c).  At most, then, the trial court's ruling was harmless error.

> Harmless error exists where:  (1) the error did not prejudice the defendant or the prejudice was **de minimis**; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. **Commonwealth v. Simmons**, 541 Pa. 211, 662 A.2d 621 (1995) citing **Commonwealth v. Williams**, 524 Pa. 404, 573 A.2d 536 (1990).

**Commonwealth v. Robinson**, 721 A.2d 344, 350 (Pa. 1998), **cert. denied**, 528 U.S. 1082 (2000).

Instantly, Holloman also told Foy that "Murder killed Danny."  Although he raised an objection at trial, appellant does not argue on appeal that admission of Holloman's statement was error.  Therefore, Ball's statement was merely cumulative and any error was harmless.  The trial court did not abuse its discretion in denying appellant's motion for mistrial on this basis.

Finally, appellant challenges the sufficiency of the evidence to support his convictions.  Appellant points to several alleged inconsistencies, **e.g.**, there was testimony that appellant shot Williams as he was running away, but all eight fired cartridge casings were found near Williams' body. (Appellant's brief at 28.)  According to appellant, if he were chasing Williams while firing at him, the cartridge casings would have been spread around the

area. (*Id.* at 28-29.) Appellant also argues that the medical examiner's report indicated that two of the bullets removed from the victim's body were different than the others. (*Id.* at 29-30; notes of testimony, 5/22/13, a.m. session at 41-42.) Appellant contends that this evidence is inconsistent with Holloman's testimony that only appellant had a firearm.

> In determining sufficiency of the evidence, the Court must review the evidence admitted at trial, along with any reasonable inferences that may be drawn from that evidence, in the light most favorable to the verdict winner. *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1248 (Pa.Super. 2005), *appeal denied*, 585 Pa. 687, 887 A.2d 1240 (2005). A conviction will be upheld if after review we find that the jury could have found every element of the crime beyond a reasonable doubt. *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003). The court may not weigh the evidence or substitute its judgment for that of the fact-finder. *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super. 2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Sheppard*, 837 A.2d 555, 557 (Pa.Super. 2003).

*Commonwealth v. Judd*, 897 A.2d 1224, 1233-1234 (Pa.Super. 2006), *appeal denied*, 912 A.2d 1291 (Pa. 2006).

Clearly, Holloman's testimony that appellant shot the victim repeatedly at close range was sufficient to support the verdict. Appellant's arguments regarding certain contradictions or inconsistencies in the Commonwealth's evidence were for the jury to resolve.

> The law is well settled that a sufficiency argument that is founded upon a mere disagreement with the credibility determinations made by the fact finder, or discrepancies in the accounts of the witnesses, does not warrant the grant of appellate relief, for [i]t is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial.

***Commonwealth v. Johnson***, 910 A.2d 60, 65 (Pa.Super. 2006) (internal quotation marks and citations omitted). Regarding the cluster of fired cartridge casings found near the victim's body, as the Commonwealth observes, there was testimony that Williams was unable to run because he had been shot in the buttocks by appellant's accomplice, Aursby, five days earlier. (Commonwealth's brief at 24.) Appellant retrieved the gun from Divers who was only a few feet away. (***Id.***) Therefore, there was a rational explanation for why the fired cartridge casings were not dispersed over a wider area. At any rate, these were issues for the jury, and they obviously found the testimony of Holloman and Foy to be credible.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2015

- 11 -