**[J-69-2022] [OISA: Mundy, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 10 WAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered December |
| | : | 23, 2020 at No. 176 WDA 2020, |
| v. | : | affirming the convictions and |
| | : | vacating the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| RYAN MICHAEL DUNN, | : | Allegheny County entered |
| | : | September 11, 2019 at No. CP-02- |
| Appellant | : | CR-0014780-2018, and remanding |
| | : | |
| | : | ARGUED:  October 26, 2022 |

**OPINION IN SUPPORT OF REVERSAL**

**JUSTICE DONOHUE**                                    **DECIDED:  June 23, 2023**

## I.  Introduction

Today, Justice Mundy's Opinion in Support of Affirmance ("OISA") correctly reaches the inescapable conclusion that Pennsylvania's mandatory discovery rules apply when the Commonwealth intends to call child sex abuse experts to testify in criminal trials pursuant to 42 Pa.C.S. § 5920.  Thus, I wholeheartedly agree with the OISA that Rule 573 of the Pennsylvania Rules of Criminal Procedure "applies to Section 5920, and that the trial court erred as a matter of law in concluding the Commonwealth's last-minute disclosure of an expert witness report did not violate [Rule] 573.  OISA at 1.  The OISA nevertheless fails to give weight to the prejudice suffered by appellant, Ryan Michael Dunn ("Dunn"), due to the Commonwealth's patently late notice of its intent to present the expert testimony of Jamie Mesar, MSW ("Mesar") at Dunn's trial and the vague disclosure

of the expert's testimony. Instead, it faults Dunn for failing to request a continuance, which, in the OISA's view, would have cured any minimal prejudice. I disagree. Dunn was prejudiced by the Commonwealth's late notice and vague disclosure and the prejudice was not minimal. Further, I disagree with the OISA's conclusion that such prejudice could have been cured had Dunn requested a continuance. In my view, the trial court abused its discretion by failing to compel the production of a supplemental expert report. The prejudice resulting from the Commonwealth's discovery violation coupled with the trial court's failure to afford an appropriate remedy warrants a new trial. Therefore, contrary to the OISA, I would reverse the judgment of the Superior Court.

## II. Pertinent Factual and Procedural History

Briefly, this case concerns allegations of sexual abuse levied against Dunn by his paramour's minor daughter ("the Victim"), which lasted from June of 2015 until November of 2017, but were not reported until September of 2018. Typical of a case involving sexual offenses against a minor, the only direct evidence of Dunn's purported sexual abuse came from the Victim's testimony. *See* N.T., 6/6/2019-6/7/2019, at 78-122. To buttress its case against Dunn, the Commonwealth called Mesar to testify about the wide range of behaviors exhibited by child sex abuse victims. Additionally, the Commonwealth called to testify two police officers who handled the investigation into the allegations against Dunn.[1] Dunn testified in his own defense, denying all of the Victim's allegations, and he

---

[1] Officer Donald Stoner of the Fox Chapel Police Department testified regarding the Victim's initial report of abuse, and Detective Ronald Bodnar of the Allegheny County Police Department primarily testified regarding Dunn's recorded statement, in which Dunn denied engaging in any sexual misconduct with the Victim. *See* N.T., 6/6/2019, at 123-35 (Stoner); N.T., 6/7/2019, at 371-88 (Bodnar).

called his mother and sister to testify on his behalf.[2] To corroborate the Victim's accusations in this clash of credibility, the Commonwealth offered text messages sent from Dunn to the Victim ("Texts") which purportedly evidenced consciousness of guilt, although Dunn never explicitly admitted to sexually abusing the Victim.

Of particular concern here, the Commonwealth did not inform Dunn of its intent to present Mesar's expert testimony until the eve of trial. Email from Assistant District Attorney to Trial Counsel (June 3, 2019, 16:25 EST) ("Please see attached documents. I inten[d] to call Jaime Mesar as per 42 Pa.C.S. [§] 5920.[3] Please let me know whether [Dunn] is willing to consider other offers. I'll see you tomorrow."). Mesar's curriculum vitae and a letter from Mesar to the prosecutor were attached to the email. Mesar's letter stated the following:

> As per our recent conversation, I am available to provide information and testimony that may assist a judge and/or jury in understanding the dynamics of child sexual abuse victims, their responses to child sexual abuse and the impact of child sexual abuse on the victims. As an expert witness in the area of child sexual abuse, I would be prepared to discuss, in general, the typical ways children disclose abuse, how they react to child sexual abuse and coping mechanisms they may use. This report is limited to three areas of relevance for the requested testimony: Disclosure of abuse and children's behaviors regarding disclosure (gradual, delayed and recanted disclosures), victim behavior at the time of the abuse and victim behavior after the disclosure.

---

[2] Dunn's sister and mother testified, inter alia, that Dunn's home was a chaotic space lacking privacy due to the presence of seven children and the Victim's mother's open-doors policy. Both women testified that the Victim complained about her lack of privacy as a result. N.T., 6/10/2019, at 526, 533-34. During closing argument, Dunn's counsel argued that, given these conditions, it would have been "impossible" for Dunn to sexually abuse the Victim "routinely" as alleged without being noticed by other house members. *Id.* at 564.

[3] Section 5920 permits parties to proffer expert testimony in criminal proceedings regarding victim behaviors in response to sexual violence. 42 Pa.C.S. § 5920.

My testimony will be based on my almost twenty years of experience in child welfare, which includes interviews and interactions of alleged and confirmed child sexual abuse victims, my education as a master's level social worker with a certificate in child welfare and professional training I have received over the course of my employment. I have provided citations of relevant research articles which will further my testimony (although my testimony will not be limited to this information) and I have also enclosed a copy of my curriculum vitae.

Disclosure of abuse and children's behaviors regarding disclosure:

> • Children who disclose abuse often do not disclose right away and the disclosure may be initially tentative and/or gradual over a period of time.
> • Many children who have been victims never disclose their abuse for a wide variety of reasons (threats, fear, relationship to the abuser, unintended consequences of the disclosure, bribes, shame)
> • Denial of the abuse or recantation of the allegations are not uncommon

Victim behavior at the time of abuse:

> • There is no "normal" response for all victims. Child sexual abuse victims experience a wide range of emotions and responses
> • Some victims (especially young victims and those who have experienced multiple incidents of child sexual abuse) may not know they have been a victim of child sexual abuse
> • Child sexual abuse victims may feel helpless and show accommodating behaviors.

Victim behavior after disclosure[:]

> • There is no "standard" response following a disclosure. Some children display emotional and behavioral changes and others do not. If a child does display an emotional/behavioral change they can vary by intensity and type.

> Others['] responses to a child's disclosure
> greatly impacts the short term and long term
> response of a child sexual abuse victim.

Mesar's Letter, 5/31/2019, at 1-2 ("Mesar's Letter"). Mesar's Letter concluded with citations to five articles ostensibly supporting her proposed testimony. *Id.* at 2.

The following morning, Dunn's trial counsel immediately filed a Motion to Compel Additional Discovery, Preparation and Disclosure of Expert Witness Report ("Motion to Compel"), and a separate Motion to Preclude Expert Witness ("Motion to Preclude"). In the Motion to Compel, Dunn argued that no "expert report has been generated or provided detailing the substance of the facts to which the expert is expected to testify, the actual opinions arrived upon by the expert, or the basis or grounds for said opinions[,]" and requested that the court "compel the preparation and disclosure of an expert report consistent with the standards provided under Pa.R.Crim.P. 573(B)(2)(b)." Motion to Compel, 6/4/2019, at 3. In his Motion to Preclude, Dunn asked the court to exclude Mesar's testimony based on similar rationale. Motion to Preclude, 6/4/2019, at 2-3.

The trial court held a hearing on the motions where trial counsel reiterated that Mesar's Letter provided only "**generic and generalized conversation** about things that may not even apply to this matter[,]" and that the late disclosure did not allow Dunn the opportunity to conduct his own research or consult an expert for "possible rebuttal[,]" in part because there "might be a divergence of opinions **based upon what the proposed testimony would be**." N.T., 6/4/2019, at 6 (emphasis added). The trial court ultimately denied Dunn's Motion to Compel, reasoning that no additional report was required because the Commonwealth's disclosure of Mesar's Letter, "combined with the statute

under which this expert was testifying, adequately put defense counsel on notice as to the nature of her testimony." Trial Court Opinion, 6/24/2020, at 6.

After deliberating for several hours over two days, the jury returned a guilty verdict on all counts. On September 11, 2019, the trial court sentenced Dunn to an aggregate term of 214 to 428 months' incarceration. Dunn then timely filed a notice of appeal to the Superior Court.

The Superior Court ascertained no abuse of discretion in the trial court's denying the Motion to Compel. *Commonwealth v. Dunn*, 176 WDA 2020, 2020 WL 7682502, at *5 (Pa. Super. Dec. 23, 2020) (non-precedential decision). The court reasoned that Section 5920 "has no notice requirement and does not require the production of an expert report[,]" *Dunn*, 2020 WL 7682502, at *4, and that Mesar's Letter nevertheless adequately apprised Dunn "of the subject matter" of Mesar's "anticipated testimony[,]" *id.* at *4 n.5.

### III. Parties' Arguments

Dunn filed a timely petition for allowance of appeal, and we granted review of the following question:

> Are the Superior Court's holdings that the Commonwealth (1) need not provide notice to a criminal defendant of its intent to call an expert witness pursuant to 42 Pa.C.S. § 5920 (relating to Expert testimony concerning victim responses and behaviors) and (2) need not prepare and disclose a detailed expert report irreconcilable with the Superior Court's decision in *Commonwealth v. Cramer*, 195 A.3d 594 (Pa. Super. 2018) and this Honorable Court's decision in *Commonwealth v. Jones*, 240 A.3d 881 (Pa. 2020)? Are these same holdings inconsistent with the Pennsylvania Rules of Criminal Procedure and the Due Process provisions of the United States and Pennsylvania Constitutions?

*Commonwealth v. Dunn*, 274 A.3d 719 (Pa. 2022) (per curiam).

In his brief, Dunn concedes that Mesar's expert testimony "arguably f[e]ll within the broad, generic categories of potential testimony identified in her letter," but that none of Mesar's "case-specific opinions fairly could have been anticipated therefrom." Dunn's Brief at 46. In this regard, Dunn identifies several parts of Mesar's testimony that directly foreshadowed issues involving the Victim's particular behavior in relation to her accusations against Dunn. *Id.* at 43-46. Dunn asserts that "Mesar's in-court testimony veered far beyond the platitudes outlined in her letter." *Id.* at 46. "In short," Dunn argues, "Mesar's [L]etter failed to meaningfully apprise [him] of the substance of her expert testimony, which touched upon extremely fact-specific themes and elements of the prosecution against [] Dunn. Fundamental fairness and the truth-determining process are frustrated, if not subverted entirely, by this strategy." *Id.* at 46-47.

The Commonwealth expends virtually no effort defending its late disclosure of Mesar's Letter. As to Dunn's claim that Mesar's Letter was too vague, the Commonwealth argues that "no more was required" under Rule 573. Commonwealth's Brief at 17. The bulk of the Commonwealth's argument focuses on Dunn's burden on appeal to demonstrate prejudice. In that vein, the Commonwealth contends that Dunn cannot establish prejudice given the weight of the evidence supporting the conviction, and that he "does not reference any expert whom he has uncovered who could refute anything that Mesar said, and he does not set forth any particular line of cross-examination that he has now developed that would have augmented the cross-examination that his defense counsel conducted at trial." *Id.* at 26-27 (footnotes omitted).

## IV. Analysis

Initially, I agree with the OISA that "the lack of internal notice requirements" in Section 5920 does not equate "to no notice requirements[,]" and that Section 5920 is a substantive rule regarding the admissibility of evidence for which notice is governed by the pretrial discovery rules set forth in Rule 573. OISA at 17. And while I also agree with the OISA that the Commonwealth violated its duty to promptly disclose under Rule 573, I would go farther to hold that Mesar's Letter lacked the specificity required for admissible Section 5920 testimony to the extent that the trial court abused its discretion by failing to grant Dunn's Motion to Compel a more detailed expert report in compliance with Rule 573(B)(2)(b). Finally, I would conclude that Dunn is entitled to a new trial because he was prejudiced by the Commonwealth's unremedied discovery violations.

Section 5920 provides, in pertinent part, as follows:

**§ 5920. Expert testimony in certain criminal proceedings**

**(a) Scope.--**This section applies to all of the following:

[list of applicable offenses]

**(b) Qualifications and use of experts.--**

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual

violence or domestic violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

…

42 Pa.C.S. § 5920.

**Violation**

I agree with the OISA that the Commonwealth violated the discovery rules by failing to disclose its intent to call Mesar to testify until the eve of Dunn's trial. Rule 573 requires that, "on request by the defendant, … the Commonwealth **shall** disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case." Pa.R.Crim.P. 573(B)(1) (emphasis added). The enumerated items include "any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth[.]" Pa.R.Crim.P. 573(B)(1)(e). Additionally, Rule 573(D) imposes a continuing duty on both parties to promptly disclose new evidence or new witnesses. Pa.R.Crim.P. 573(D) ("If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to

discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.")

Here, if Mesar's Letter constituted an expert report or opinion, it was discoverable under Rule 573(B)(1)(e), and therefore also subject to the continuing disclosure requirements of Rule 573(D). Regardless, even if Mesar's Letter did not constitute an expert report or opinion within the meaning of Rule 573(B)(1)(e), and even if it did not trigger Rule 573(D)'s mandatory disclosure as to "evidence or material previously requested or ordered to be disclosed by it," the Commonwealth's intent to present Mesar's testimony would nevertheless trigger Rule 573(D)'s prompt notification requirement for "the identity of an additional witness or witnesses" discovered prior to trial. Pa.R.Crim.P. 573(D).

However, I would also hold that Mesar's Letter failed to satisfy the Commonwealth's disclosure requirements because it was insufficiently tailored to the facts of this case. Section 5920 permits a sex abuse expert to testify "regarding **specific** types of victim responses and victim behaviors." 42 Pa.C.S. § 5920(b)(2) (emphasis added). Furthermore, to be admissible, Section 5920 testimony must be relevant to the proceedings. Pa.R.E. 402 ("Evidence that is not relevant is not admissible."). "Evidence is relevant **if**: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; **and** (b) **the fact is of consequence in determining the action**." Pa.R.E. 401 (emphasis added). Finally, Rule 702 provides that an expert may only testify if "the expert's scientific, technical, or other specialized knowledge will help the trier of

fact to understand **the evidence** or to determine **a fact in issue**[.]"  Pa.R.E. 702(b) (emphasis added).[4]

Reading Section 5920 in conjunction with these rules, expert testimony involving victim responses and victim behaviors must be tailored to the evidence in each individual case.  Section 5920 should not be read as an invitation to lecture to the jury about a myriad of potential topics that might arise in any case involving sexual abuse; instead, it is designed to address specific issues stemming from a particular set of facts and circumstances.  Testimony regarding generic victim responses and victim behaviors is too general to meet Section 5920(b)(2)'s specificity requirement, otherwise the term "specific" is rendered superfluous in that provision.  Furthermore, testimony regarding particular responses and behaviors by victims is irrelevant if it does not pertain to the facts specific to the matter before the trial court, and expert testimony is inadmissible if it does not address "the evidence" or "a fact in issue." Pa.R.E. 702(b).  Under our rules, an expert is confined to expressing opinions relevant to the matter being tried.

Here, Mesar's Letter was far too general to meet Section 5920(b)(2)'s specificity requirements and, because it promised testimony regarding victim responses and victim behaviors that went well beyond evidence of the Victim's actual responses and behaviors, it contained topics that were irrelevant under Rule 401 and outside the scope of Rule 702. Thus, Mesar's Letter left Dunn only able to speculate as to the relevant facts and opinions that Mesar would subsequently provide at trial.  Indeed, Mesar's Letter contained nothing that narrowed the scope of her proposed testimony to the facts and circumstances of this

---

[4] The Superior Court has held that Rule 702 applies to Section 5920 testimony.  *Cramer*, 195 A.3d at 606.

case, as recognized by the trial court when it stated that Mesar's Letter "is generic in nature" and proffered testimony "to explain to jurors the concept of delayed report[ing] and not specific in any way to the facts of this case." N.T., 6/4/2020, at 6.[5]

Thus, in addition to finding that the Commonwealth violated Rule 573(D)'s prompt disclosure mandate, I also conclude that Mesar's Letter failed to apprise Dunn of "**specific** types of victim responses and victim behaviors" at issue in this case, 42 Pa.C.S. § 5920(b)(2) (emphasis added), because it only provided Dunn with notice of generic victim responses and victim behaviors, much of which was irrelevant and inadmissible in the circumstances of this case.[6,7]

---

[5] Dunn's counsel responded that the court's description of the proposed expert testimony was precisely what made it objectionable: "Just for the record, that's part of my objection to the introduction of the testimony, that it has really nothing to do with this case and is generic and generalized conversation about things that may not even apply to this matter." N.T., 6/4/2020, at 6. When the court later stated that it was not novel science that sexual assault victims of all ages do not always promptly report, Dunn's counsel asserted that the Victim's delayed reporting was "not even part of our defense. We have really no issue with the [delayed] reporting in this case." *Id.* at 10.

[6] Further highlighting the problem with Mesar's Letter and the trial court's embrace of it is the fact that the Commonwealth called Mesar as its first witness. The testimony was presented in a vacuum and the only possible purpose for it was to shore up any evidence that would follow, including the testimony of the Victim. Section 5920(b)(3) specifically prohibits opinion testimony regarding the credibility of a witness, including the victim. Allowing generic testimony that validates any and all otherwise anomalous behavior of sexual abuse victims, offered as a preface to the Commonwealth's case, serves as an opinion on the credibility of the testimony to follow.

[7] With a sense of precision akin to buckshot, the OISA counters that Mesar's Letter "detailed three specific categories she was prepared to discuss at trial" within which Mesar provided "bullet points setting forth precisely what would be discussed." OISA at 18-19. It is difficult to conceive of what Mesar was not prepared to discuss with respect to child sexual assault victims' behaviors, given the broad and generic platitudes that constitute Mesar's Letter. Inverting the nature of this problem, the OISA again transfers responsibility for the Commonwealth's discovery violations onto Dunn, stating that "Dunn was required to lodge a specific objection at trial" to the extent that "Mesar's testimony

**Remedy**

Rule 573 provides a variety of remedies for discovery violations. The trial court may order a violating party "to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 573(E). Additionally, regardless of whether a discovery violation has occurred involving an expert witness, "the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions

---

went beyond that detailed in the letter[.]" *Id.* at 19. However, I have no dispute with the general proposition that Dunn was required to object at trial if he sought relief solely from testimony that exceeded the scope of Mesar's Letter. The nature of this problem, however, is that the scope of Mesar's Letter was so broad and generic that it failed to **narrow** the vast array of possible topics that the letter envisaged in such a way as to provide useful notice to the defense. Dunn's other arguments aside, the prejudice I am concerned with had fully materialized when the trial court denied Dunn's motions to preclude or compel.

Furthermore, it is no excuse that "experts testifying in this area must avoid encroaching on the jury's province of commenting on witness credibility." *Id.* An expert witness can surely comment on a victim's behaviors without reaching specific conclusions about credibility, as expert witnesses routinely do in our courts despite a global ban on experts' direct commentary on the credibility of witnesses. Moreover, it strains credulity to believe that a jury will distinguish between the Commonwealth's asking hypotheticals of an expert that directly track the specific behaviors of a victim of sexual violence versus the Commonwealth's directly asking the expert about the specific behaviors of that victim. Rule 5920 does not forbid an expert's discussion of a specific victim's behaviors; it explicitly permits them. 42 Pa.C.S. § 5920(b)(2) ("If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors."). That this charade has become common practice, *see* OISA at 18 (stating "Section 5920 experts generally abstain from reviewing specific facts" in the cases in which the testify), does not justify its continuation on the false pretense that an expert's opinion about the victim's behaviors is identical to an "opinion regarding the credibility" of that victim. 42 Pa.C.S. § 5920(b)(3).

and the grounds for each opinion." Pa.R.Crim.P. 573(B)(2)(b). Here, Dunn requested the exclusion of Mesar's testimony in his Motion to Preclude pursuant to Rule 573(E), and he separately requested a supplemental expert report in his Motion to Compel pursuant to Rule 573(B)(2)(b).

In assessing the trial court's failure to afford any relief for the Commonwealth's discovery violation, the OISA emphasizes that Dunn "never explicitly requested a continuance, which is generally 'deemed sufficient to eradicate possible prejudice and enable the defendant to assimilate new information.'" OISA at 22 (quoting *Commonwealth v. Rosa*, 609 A.2d 200, 204 (Pa. Super. 1992)). The OISA further declines to view Dunn's Motion to Compel "as an effective request for a continuance, particularly in light of the fact that the Commonwealth did provide an expert report detailing the substance of its proposed testimony under Section 5920." *Id.* at 23. The OISA then concludes that "the majority" of Dunn's proposed preparations ostensibly precluded by the Commonwealth's discovery violation could have been remedied had he requested a continuance. *Id.* at 23. I disagree.

I acknowledge that Dunn did not include a request for a continuance in his written motions, but the record reveals that the trial court denied a continuance, or at least thought it had done so.[8] Nevertheless, Dunn does not maintain that the trial court erred

---

[8] While addressing the Commonwealth's late disclosure of Mesar's testimony at the pretrial hearing, trial counsel stated: "I think my client has the right to confront this witness as well as any other, and we would have appreciated the opportunity to conduct our own research and consult with our own expert." N.T., 6/4/2019, at 6. Despite the use of the past tense, trial counsel's statement might be interpreted as request for additional time to conduct research and consult an expert. At least the Commonwealth thought so, *see id.* at 8 ("[T]he Commonwealth would ask the [c]ourt to deny the defendant's request for additional time to prepare for discovery purposes."), as did the trial court, *see* Trial Court

in failing to grant a continuance to the defense, focusing instead on the trial court's failure to grant his Motion to Compel. However, I disagree with the OISA that a continuance would have adequately remedied the prejudice incurred by Dunn, and I question a rule that places the burden on the defendant to mitigate the Commonwealth's violation of the discovery rules and then penalizes him for not doing so. Nonetheless, as discussed above, Mesar's Letter was too vague to adequately apprise Dunn of the specifics of Mesar's proposed Section 5920 testimony, and the prejudice he incurred from that inadequacy could only have been cured by a more detailed report, i.e., a real expert report.

As to the trial court's denial of Dunn's Motion to Compel, the OISA summarily rejects Dunn's argument, stating: "Because the Commonwealth provided Dunn with an expert witness report, the trial court did not abuse its discretion in denying Dunn's motion to compel the production of one." OISA at 18 n.8. This mischaracterizes the nature of Dunn's request and the procedural history of this case.[9]

---

Opinion, 6/24/2020, at 6 (stating "counsel sought additional time to rebut or undermine [Mesar's] testimony").

[9] Although the OISA now concludes that Mesar's Letter was an expert report "for purposes of Section 5920[,]" OISA at 18, the document itself did not purport to be an expert report, nor did the prosecutor indicate in her email to defense counsel that the Commonwealth was disclosing an expert report. Nevertheless, Dunn argued in his Motion to Compel that "[n]o expert report has been generated or provided **detailing the substance of the facts to which the expert is expected to testify, the actual opinions arrived upon by the expert, or the basis or grounds for said opinions**." Motion to Compel, ¶ 4 (emphasis added). The OISA waves away Dunn's request by declaring that an expert report had been provided, ignoring that Dunn was clearly requesting the production of an expert report **that was compliant with Rule 573**, and that he implicitly, but no less obviously, argued that Mesar's Letter did not meet that standard. *Id.* ¶ 5. If the OISA now contends that Mesar's Letter was an expert report all along, it should at least treat Dunn's Motion to Compel as a request for a supplemental expert report. To treat it solely as a motion to

I would reach the opposite conclusion, and instead find that the trial court abused its discretion by failing to grant Dunn's Motion to Compel because supplementation of Mesar's Letter was necessary to comply with the specificity requirement of Section 5920(b)(2).[10]  While Mesar's Letter broadly identified the subject matter of Mesar's proposed testimony, it lacked the specificity required under Section 5920(b)(2) which comports with Rules 401(b) and 702(b).  Accordingly, contrary to the OISA, I would find that the trial court abused its discretion by failing to grant Dunn's Motion to Compel in accordance with Rule 573(B)(2)(b).

**Prejudice**

The OISA correctly notes that "discovery violations do not automatically entitle an appellant to a new trial; the appellant must demonstrate that the violation resulted in prejudice.  *Commonwealth v. Counterman*, 719 A.2d 284, 298 (Pa. 1998)."  OISA at 22.  As noted above, the OISA believes that most of the prejudice alleged by Dunn could have been cured by a continuance.  *Id.* at 23.  From there, the OISA addresses the "several broad themes"[11] that comprise Dunn's prejudice argument, concluding that these

---

compel production of an expert report, despite the arguments made therein, is to elevate the form of the Motion to Compel over its substance while simultaneously purporting to elevate substance over form with respect to Mesar's Letter.

[10]  I believe the trial court abused its discretion in failing to grant the Motion to Compel, and that Dunn was prejudiced by its denial to a degree that warrants a new trial.  However, that prejudice could have also been avoided had the trial court granted Dunn's Motion to Preclude Mesar's testimony.

[11] The OISA notes that Dunn

> claims that the Commonwealth's last-minute notice prevented him from conducting independent research, developing a comprehensive cross-examination, making a knowing and

"concerns may very well be true" but are nonetheless "insufficient to demonstrate the degree of prejudice necessary to warrant a new trial[,]" again citing *Counterman*.[12] *Id.* at 22. "Beyond this," the OISA opines, Dunn cannot prove prejudice anyway. *Id.* at 24 (stating "the incriminating nature of the facts in this case do not lend themselves to a finding of prejudice"). The OISA then summarizes the Texts, construing them as so overwhelmingly inculpatory that "it is difficult to conclude Mesar's expert testimony prejudiced Dunn in any way[.]" *Id.* at 25.

First, I reject the OISA's conclusion that the prejudice incurred by Dunn due to the late and generic disclosures in Mesar's Letter could have been substantially cured had

---

> intelligent decision about whether to hire his own expert, making a robust pretrial challenge to admission of the testimony, and reflecting on how the testimony would bear upon all of the other evidence presented at trial. He additionally argues that his last-minute trial preparation was derailed in light of the Commonwealth's tardy disclosure.

OISA at 22.

[12] In *Counterman*, the defendant was sentenced to death for killing his children by means of arson. Counterman's wife initially gave police a statement corroborating Counterman's claim that he was asleep when the fire began (although she recanted that statement at trial). Counterman also made an inculpatory statement to a social worker regarding insurance coverage. On appeal, Counterman challenged the late disclosure of these statements "during the course of the trial." *Counterman*, 719 A.2d at 297. Although this Court agreed that the Commonwealth violated the discovery rules, and that the prosecutor had violated the rules of professional responsibility with his gamesmanship, the Court nevertheless concluded that Counterman had failed to demonstrate prejudice because 1) he only made generalized allegations that the late disclosures impeded his cross-examination of the Commonwealth's expert witnesses and his approach to voir dire and 2) because Counterman was permitted to admit the exculpatory statement through his wife and to cross-examine her about it. *Id.* at 298. Thus, the *Counterman* Court concluded that Counterman was not entitled to relief because "his ability to present the evidence in issue was not impaired by the late disclosure." *Id.* The *Counterman* Court did not specify why Counterman had not been prejudiced by the late disclosure of his inculpatory statement.

he requested a continuance. I cannot discern how more time studying the generalities set forth in Mesar's two-page letter could have led Dunn's counsel to better anticipate any case-specific opinions subsequently offered during her testimony. I would conclude that the trial court abused its discretion by denying Dunn's Motion to Compel, and I would analyze prejudice in this case by accounting for not only the impact of the Commonwealth's eleventh-hour disclosure in temporal terms (for which a continuance is generally an appropriate remedy), but also the substantial gap between the generalities contained in Mesar's Letter and the specificity required by the statute and rules governing expert testimony.

Second, taken together, the lateness and vagueness of the Commonwealth's disclosure invariably affected trial counsel's strategy in this case and, thus, the unavoidable effect of these unremedied discovery violations was to deny Dunn a fair trial.[13] I would conclude that Dunn has adequately demonstrated prejudice that could

---

[13] This Court has applied several different modes of ascertaining whether prejudice resulting from discovery violations is sufficient to warrant relief. In *Commonwealth v. Chambers*, 599 A.2d 630 (Pa. 1991), where the Commonwealth failed to disclose an inculpatory pre-trial statement by the defendant, this Court stated that a mistrial based on that discovery violation was only required if the "**unavoidable effect is to deprive appellant of a fair trial**." *Id.* at 637 (emphasis added). In *Commonwealth v. Jones*, 668 A.2d 491 (Pa. 1995), where the Commonwealth failed to disclose the identity of certain witnesses prior to trial, this Court concluded that Jones was not entitled to relief because he failed to develop an argument as to how a "more timely disclosure **would have affected his trial strategy**[.]" *Id.* at 513 (emphasis added). We applied an outcome-determinative test in *Commonwealth v. Small*, 741 A.2d 666, 677 (Pa. 1999) (holding that the Commonwealth's failure to produce evidence pertaining to unrecorded conversations was meritless because, inter alia, the appellant failed "to show how this evidence, even if produced, would have caused a different outcome"). In *Commonwealth v. Poplawski*, 130 A.3d 697 (Pa. 2015), this Court applied different standards to similar discovery violations. Poplawski was convicted of murdering three police officers during an ambush. The *Poplawski* Court considered, inter alia, whether he was prejudiced when the medical examiner offered an opinion as to the order of wounds that had not been discussed in the

have been completely ameliorated had the trial court simply granted Dunn's Motion to Compel (or his Motion to Preclude). Trial counsel had virtually no time to prepare to cross-examine an expert witness and, more importantly, even the most thorough and lengthy preparations could not have equipped counsel to anticipate Mesar's specific opinions because of the vagueness of Mesar's Letter.[14]

---

medical examiner's report. *Id.* at 718. Applying some variation of a harmless error test, we held that Poplawski could not demonstrate prejudice because the "**uncontradicted** evidence admitted elsewhere during trial **overwhelmingly** established" that he had fired the fatal shot. *Id.* at 719. Elsewhere in the same opinion, addressing a similar discovery violation, we held that relief was not warranted because Poplawski failed to explain how the alleged discovery violation "would have created **a reasonable possibility of a different outcome**." *Id.* at 721 (emphasis added).

While this Court clearly has applied different prejudice tests for discovery violations in different cases, and even different prejudice tests to address similar discovery violations within the same case, it has never provided an explanation for this lack of uniformity. In my view, it remains the case that the denial of a fair trial is prejudice warranting the grant of a new trial. My view is reinforced in *Counterman*, upon which the OISA relies. *See* OISA at 22. Citing *Chambers*, the *Counterman* Court stated that a mistrial is warranted "when a discovery violation is of such a nature as to deprive the defendant of a fair trial." *Counterman*, 719 A.2d at 298. The OISA also cites to the Superior Court's decision in *Commonwealth v. Causey*, 833 A.2d 165 (Pa. Super. 2003), which does not explicitly state the "denial of a fair trial" standard but, nevertheless, also cites to *Chambers* approvingly. *Id.* at 171.

[14] I further observe that in *Chambers* and *Jones*, both cited by the OISA for the proposition that the failure to request a continuance weighs against a finding of prejudice, *see* OISA at 22, this Court was addressing discovery violations significantly more diminutive in scope and involving the Commonwealth's failure to disclose evidence of which the defendants should have been aware. *Chambers* concerned an undisclosed statement **by the defendant** indicating that he had been involved in unrelated illegal activity "at some point in the evening following the murder" for which he was on trial. *Chambers*, 599 A.2d 637. In *Jones*, the Commonwealth failed to disclose its intent to call a hotel employee witness it proffered to authenticate a hotel registration form filled out by Jones' co-defendant, where Jones was already "aware of the hotel stay and could have interviewed" the witness himself. *Jones*, 668 A.2d at 513. Neither of those cases addressed circumstances similar to those here, where the Commonwealth failed to provide adequate notice of its intent to call an expert witness (who would subsequently provide a substantial amount of unanticipated testimony), nor did those cases involve the

Although the Commonwealth contends that Dunn fails to establish how he would have rebutted Mesar's testimony had he been given more time to prepare,[15] that argument focuses too much on the lateness of the Commonwealth's disclosure of Mesar's Letter, and too little on the inadequate disclosure that it provided. Dunn was prejudiced because he was deprived of the opportunity to make a reasonable, calculated decision as to whether it was worthwhile to obtain an expert to either rebut Mesar's testimony or to aid the defense in minimizing any negative effects Mesar's testimony would have in this clash-of-credibility case. Because Mesar's Letter was too vague to enable counsel to anticipate the specific opinions Mesar ultimately offered at trial, Dunn was unfairly deprived of that opportunity, and a continuance without a supplemental report would have been meaningless. The inability to prepare for cross-examination of an expert witness and to prepare a strategy to address the testimony affects the fairness of the proceedings. As Dunn succinctly explains, he "was deprived of the opportunity to meet the government's evidence and develop his trial strategy." Dunn's Reply Brief at 5.

Third, the OISA appeals to the notion that the weight of the evidence of Dunn's guilt was so great that it rendered any discovery violation involving Mesar's Letter and proposed testimony insignificant by comparison. I disagree. While I generally agree that the Texts were inculpative, I am less convinced than the OISA as to what extent, and to which crimes, they implicated his guilt. In the Texts, Dunn told the Victim that he did not

_____

vagueness problem associated with the Commonwealth's disclosure in this case that failed to comply with the specificity required of an expert's report.

[15] The Commonwealth contends that the trial court could not have abused its discretion in failing to offer a remedy because Dunn "has never offered anything" contrary to the opinions "to which Mesar would be testifying." Commonwealth's Brief at 45.

know he had been abusing her, that he loved her, that she was too young, that he was wrong, that he did not want to hurt her, that he felt guilt and shame, and he further admitted that he was going to prison. OISA at 24-25 (quoting N.T., 6/6/2019, at 183-87). It would be reasonable for the jury to infer Dunn's consciousness of guilt of something from the Texts, and so it is certainly fair to assume they tended to bolster the Victim's credibility and simultaneously undermined the credibility of Dunn's denials.

However, the Texts did not contain explicit admissions or other direct evidence of Dunn's guilt as to specific crimes. To reach a conviction, the jury still had to believe the Victim's testimony and disbelieve Dunn's testimony. Thus, at its core, Dunn's prosecution was still primarily a clash of credibility between the accused and the accuser, and the Texts only served to buttress the Victim's credibility in that battle. How much or how little the Texts affected this clash of credibility is clearly a question for a jury, not an appellate court.[16] As damaging as the Texts might have been in the jury's eyes as a practical matter, Dunn did not admit to committing any of the sexual offenses for which he was convicted. As such, the Texts were only indirect evidence of Dunn's guilt, requiring the jury to make inferences that his messages to the Victim undermined his credibility and buoyed hers.

This is particularly important since the OISA appears to be applying a variation of the harmless error doctrine, albeit with the burden ostensibly flipped to Dunn.

> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was

---

[16] "The law is well settled that it is the exclusive province of the trier of facts to pass upon the credibility of witnesses and the weight to be accorded their testimony." *Commonwealth v. Garvin*, 293 A.2d. 33, 39 (Pa. 1972).

> substantially similar to the erroneously admitted evidence; or (3) the properly admitted **and uncontradicted** evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Fulton*, 179 A.3d 475, 493 (Pa. 2018) (citation omitted) (emphasis in original). Despite this Court's recent recognition that appellate courts may, in limited circumstances, invoke the harmless error doctrine sua sponte, *see Commonwealth v. Hamlett*, 234 A.3d 486 (Pa. 2020), it remains the general rule that the "Commonwealth bears the burden of proving that the error was harmless beyond a reasonable doubt." *Commonwealth v. Holt*, 273 A.3d 514, 540 (Pa. 2022), *cert. denied sub nom., Holt v. Pennsylvania*, 143 S. Ct. 380 (2022). However, as discussed above, I acknowledge that without providing a principled reason on for doing so, this Court has previously engaged in similar, quasi-harmless error analysis when determining whether prejudice stemming from discovery violations warrants relief. *See Poplawski*, 130 A.3d at 719.

Regardless, when applying the third prong of the harmless error test, "the properly admitted evidence of guilt must be **uncontradicted** for error to be held harmless beyond a reasonable doubt." *Commonwealth v. Williams*, 573 A.2d 536, 539 (Pa. 1990) (emphasis added); *accord Poplawski*, 130 A.3d at 719 (stating the "**uncontradicted** evidence admitted elsewhere during trial overwhelmingly established…") (emphasis added). Here, the Victim's accusations of sexual abuse were directly contradicted by Dunn's testimony, as were the inculpatory inferences stemming from the Texts. As implausible as Dunn's explanations for those Texts might seem to the OISA and this

Author, harmless error analysis is simply inapplicable in the circumstances of this case because there was no "uncontradicted" evidence of guilt.[17]

Thus, I respectfully disagree with the OISA's application of a modified harmless error analysis and its conclusion the Commonwealth's discovery violation could not have prejudiced Dunn to any significant degree because of the weight of the evidence against him. To the contrary, because this was still a clash-of-credibility case, the Commonwealth's violation of the discovery rules, coupled with the trial court's failure to provide an appropriate remedy including a supplemental expert report, affected trial counsel's strategy to an extent that compromised the fairness of the proceedings, thereby undermining confidence in the jury's verdict.

## V. Conclusion

In sum, I agree with the OISA that the trial court erred 1) in failing to recognize that Section 5920 testimony is subject to the discovery rules set forth in Rule 573, and 2) by failing to hold that the Commonwealth violated the prompt disclosure requirements of Rule 573 by not disclosing its intent to call an expert witness until the eve of trial. However, I would also conclude that the trial court abused its discretion by denying Dunn's Motion to Compel an expert report in compliance with Rule 573(B)(2)(b), because Mesar's Letter was too generic to meet the specificity requirements of Section 5920(b)(2), which comports with Rules 401(b) and 702(b). Furthermore, I would find that Dunn was

---

[17] The OISA responds that I am merely critiquing "precedent, as opposed to" the OISA's "application of the law," OISA at 26 n.12, but I do not dispute that this Court previously applied a harmless error test to address discovery violations. However, our precedent also dictates that that the harmless error test only applies when the **uncontradicted** evidence of guilt is overwhelming. *Williams*, 573 A.2d at 539; *Poplawski*, 130 A.3d at 719. The OISA has no answer for that precedent other than to simply ignore it.

prejudiced by the Commonwealth's violation of the discovery rules which was perpetuated by the trial court's denial of Dunn's Motion to Compel. Consequently, I would hold that Dunn is entitled to a new trial where he can adequately prepare to confront the Commonwealth's expert. Moreover, while the OISA applies a type of harmless error analysis to conclude that Dunn was not prejudiced, its conclusion is wrong because there was no uncontradicted evidence of guilt in the trial. Accordingly, I would reverse the judgment of the Superior Court and remand for a new trial.

Justices Dougherty and Wecht join this opinion in support of reversal.